**IN THE UNITED STATES DISTRICT COURT FOR TENNESSEE**
**FOR THE MIDDLE DISTRICT**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DR. JAMES BAILEY,** | ) | |
| **DR. PIPPA MERIWETHER, and** | ) | |
| **DR. DAMON CATHEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-0122** |
| | ) | **JURY DEMAND (6)** |
| **THE METROPOLITAN** | ) | |
| **GOVERNMENT OF NASHVILLE AND** | ) | |
| **DAVIDSON COUNTY, TENNESSEE** | ) | |
| **AND DR. ADRIENNE BATTLE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

Come the Plaintiffs, Dr. James Bailey, Dr. Pippa Meriwether, and Dr. Damon Cathey, and would state unto this Honorable Court as follows:

## PARTIES AND JURISDICTION AND VENUE

1.       Plaintiffs, Dr. James Bailey, Dr. Pippa Meriwether, and Dr. Damon Cathey bring this action against Defendants under 42 U.S.C. §1983 for violations of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America, for violations of the Tennessee Teacher Tenure Act, §49-5-501 *et. seq.* Plaintiffs sue The Metropolitan Government of Nashville and Davidson County, Tennessee (MNPS) for age discrimination in violation of the Tennessee Human Rights Act (THRA), §4-21-101 *et. seq.* and §4-21-401 *et. seq.* and the Age Discrimination in Employment Act, 29 U.S.C.A 621, et. seq. (ADEA).   Plaintiff Bailey also sues Defendants for violations of the First Amendment to the United States Constitution and MNPS for

1

violation of the Tennessee Public Protection Act (TPPA), §50-1-304. Jurisdiction is conferred upon the Court by 28 U.S.C. §1331 and the Court has pendant jurisdiction over the state law claims.

2.    Plaintiff, Dr. James Bailey, is a citizen and resident of Sumner County, Tennessee, residing in Hendersonville, Tennessee.

3.    Plaintiff, Dr. Pippa Meriwether, is a citizen and resident of Rutherford County, Tennessee, residing in Murfreesboro, Tennessee.

4.    Plaintiff, Dr. Damon Cathey, is a citizen and resident of Williamson County, Tennessee, residing in College Grove, Tennessee.

5.    Defendant, Dr. Adrienne Battle, is the Director of Schools for the Defendant, MNPS.

6.    Defendant, The Metropolitan Government of Nashville and Davidson County, Tennessee, is a governmental entity operating a public school system (hereinafter MNPS) in Nashville, Davidson County, Tennessee.

7.    The cause of action alleged in this Complaint arose in Davidson County, Tennessee.

## FACTS

8.    Plaintiff, Dr. James Bailey, is forty-eight years old.

9.    Plaintiff Bailey was tenured at MNPS at all times relevant to this Complaint.

10.   Dr. Bailey earned a Bachelor of Arts Degree from American Baptist College, a Master of Education from Tennessee State University, a Specialist Degree in Education from Middle Tennessee State University, and a Doctorate in Education from Walden University.

11.   Plaintiff, Dr. James Bailey, began working for the Defendant in 2003 as a teacher and by 2008, Plaintiff Bailey had been promoted to Dean of Students at Pearl-Cohn Entertainment Magnet High School and shortly thereafter, he was promoted to the position of Academy Principal of the Business and Communications Academy.

2

12.     He was then promoted to the International Business and Communications Academy Principal at Hillsboro High School.

13.     In 2012, Dr. Bailey was then promoted to be the Executive Principal at Whites Creek High School and he remained in this position until June 30, 2020.

14.     Plaintiff Bailey is certificated and has been certificated at least since 2008.

15.     The position of Executive Principal at Whites Creek High School is a certificated position.

16.     Plaintiff, Pippa Meriwether, is fifty-eight years old.

17.     Plaintiff Meriwether is tenured at MNPS and had been tenured since 2002.

18.     Dr. Meriwether earned a Bachelor's degree from Middle Tennessee State University, a Master's degree, an Education Specialist Degree and a doctoral degree from Tennessee State University.

19.     Dr. Meriwether has served Metro Schools as a classroom teacher, a behavior specialist, and as an Executive Principal. In 2010, Dr. Meriwether was promoted to the position of Executive Director in which she served until 2017.

20.     In 2017, Plaintiff Meriwether was promoted to Community Superintendent for the Northwest Quadrant, and in 2019, she was promoted to the position of Associate Superintendent and remained in this position until June 30, 2020.

21.     Plaintiff Meriwether is certificated and has been certificated since 1998.

22.     The position of Associate Superintendent is a certificated position.

23.     Plaintiff Dr. Cathey is fifty-five years old.

24.     Dr. Cathey is tenured at MNPS and had tenure at all times relevant to this Complaint.

25.     Dr. Cathey is certificated and has been certificated since 1997.

3

26.     Dr. Cathey earned his Bachelor of Science in Engineering Technology from the University of Memphis in 1989. He earned his Master of Arts in Teaching from the University of Memphis in 1993. He earned his Doctor of Education from Vanderbilt University in 2001.

27.     Dr. Cathey has twenty-seven years' experience in public education, with twenty of those years spent working for MNPS.

28.     Dr. Cathey served as a teacher, assistant principal, and then a principal at MNPS from 1993 through 2006. From 2006 through 2013, he worked in public education outside of MNPS, including serving as the Assistant Superintendent for Kingsport City Schools from 2007 through 2011.

29.     Upon Dr. Cathey's return to MNPS in 2013, he served as an Executive Principal and then as an Executive Lead Principal. In 2017, he was promoted to the role of Community Superintendent for the Northeast Quadrant. In 2019, he was promoted to the position of Associate Superintendent.

30.     In 2019, the Tennessee Principals Association named Dr. Cathey "Supervisor of the Year" for Middle Tennessee.

31.     In 2018, Dr. Adrienne Battle was the community superintendent for the Southeast Quadrant and Dr. Battle's relative was the Whites Creek High School assistant principal and basketball coach.

32.     Prior to February 2018, both Plaintiffs Bailey and Meriwether knew and were colleagues and friends and got along very well with Dr. Adrienne Battle.

33.     On Friday, February 16, 2018, Whites Creek played East High in a basketball game.

4

34.     When the game ended, the Whites Creek team went to the locker room. A parent of a player who the Coach did not play in the game came down to the locker room and began to beat on the locker room door and asked for the Coach to come outside.

35.     The Coach went outside to speak with the parent and got into a physical fight with the parent. The Coach's best friend was also in the locker room and he also became involved in the altercation. Then, the students began taking sides and fighting each other.

36.     The Coach beat up the parent.

37.     After all this chaos, the Coach got in his car and left the premises.

38.     Plaintiff, Dr. Bailey, was contacted by Whites Creek Assistant Principal, Danette Warren, and Warren told Plaintiff Bailey that the Coach "had beat the parent up bad and that blood was all over the floor".

39.     The next night, February 17, 2018, Dr. Adrienne Battle called Plaintiff Meriwether and stated that she needed to let Dr. Meriwether know about a situation that occurred that Dr. Meriwether might need to be aware of and told Dr. Meriwether of the fight the evening before.

40.     Dr. Battle told Dr. Meriwether the parent had no right to walk up on the Coach and that is what he gets because the Coach had a right to defend himself. Dr. Battle told Dr. Meriwether this as if what had taken place was okay.

41.     Dr. Meriwether felt Dr. Battle expected her to accept her account and just squash the matter, however, when Plaintiff Meriwether got off the phone with her, she immediately called Plaintiff Bailey to inquire about what happened and to ask him why he did not notify her immediately on that Friday night about the incident as she was his Community Superintendent.

5

42.     Plaintiff Bailey told Dr. Meriwether that Dr. Battle was at the game and he talked to her that night. Dr. Battle told him that she had taken care of the situation involving the Coach and that she would inform Dr. Meriwether of the situation.

43.     Plaintiff Meriwether then called her boss, Dr. Sito Narcisse, Chief of Schools, and informed him of the situation. Dr. Narcisse told Plaintiff Meriwether to continue to gather information about what happened. Dr. Narcisse said that Dr. Battle should not have inserted herself in the matter and that he was going to call her right away to tell her to stay out of the matter.

44.     Dr. Battle and Plaintiff Meriwether spoke again right after her call with Dr. Narcisse and she was very upset at the fact that Plaintiff Meriwether had informed Dr. Narcisse of the incident and that Dr. Narcisse had strongly told her to stay out of the matter.

45.     In this conversation, Dr. Adrienne Battle kept reiterating that the Coach had the right to defend himself and Dr. Narcisse could not tell her that she could not be involved in this matter.

46.     Dr. Cathey was disturbed by the incident with the Coach. At the time this incident occurred, Dr. Cathey and Dr. Battle were both Community Superintendents; therefore, Dr. Cathey tried to have a "peer-to-peer" discussion with Dr. Battle to explain his perception of the gravity and seriousness of the incident with the Coach. Dr. Battle responded by stating that "…[the Coach].. has the right to protect himself. No one is going to punk …[the Coach]." Considering the severity of the situation, this statement shocked Dr. Cathey.

47.     The relative was placed on administrative leave and an investigation ensued.

48.     Thereafter, Dr. Battle became distant and cold towards both Plaintiffs Meriwether and Bailey.

49.     Dr. Bailey received threats about his job and became afraid for his safety.

50.     Plaintiff Meriwether contacted human resources and reported this retaliation against Dr. Bailey.

51.     In this same time period, Plaintiff discovered and reported to the Metro auditors that an employee may have mishandled funds from a basketball team fundraiser.

52.     On March 7, 2018, the audit concluded and recommended that this employee not be in a position to handle money for Metro schools.

53.     After the investigation of the fight was completed, Dr. Bailey made the recommendation for termination of the Coach in his position at Whites Creek. Plaintiff Meriwether upheld this decision.

54.     This recommendation resulted in a non-rehire of the Coach as he was not a certified teacher and did not have tenure.

55.     This decision to not re-hire the Coach was appealed by the Coach.

56.     In approximately August 2018, in an administrative hearing on the Coach's appeal, Plaintiff Bailey testified under oath about the actions of the Coach dealing with the fight. Plaintiff also testified about the missing funds.

57.     In February 2020, the Tennessee Association of Secondary School Principals named Plaintiff Bailey the Principal of the Year for Middle Tennessee.

58.     MNPS published on its website that the Tennessee Association of Secondary School Principals had given Dr. Bailey this award and "praised Dr. Bailey for Whites Creek's "tremendous" academic gains, for working to improve the school's culture and climate, and for promoting a positive work environment for faculty and staff."

59.     In May 2018, Dr. Bailey won the Governor's Environmental Stewardship Award.

7

60.     In approximately February 2020, Dr. Bailey's supervisor, Renita Perry, and her supervisor, Dr. Sharon Griffin, came to Whites Creek for The Problem of Practice meeting and told Plaintiff and his leadership team at Whites Creek that they were doing a great job and to keep on doing what they were doing.

61.     For the 2019-2020 school year, Plaintiffs Meriwether and Cathey were both promoted to be two of the four Associate Superintendents.

62.     In the Spring 2019 semester, when Dr. Cathey was still the Community Superintendent over the Northeast Quadrant, Dr. Cathey learned that the principal at a high school (hereafter, "Doe High School") in his quadrant was falsifying student grades.

63.     Specifically, students at Doe High School were enrolled in virtual instruction courses for certain math and science classes because MNPS was unable to fill faculty vacancies because of a shortage of teachers with the required certifications.

64.     In late March and early April 2019, the principal at Doe High School approved a "contract" with the students in the virtual instruction courses. This "contract" stated that students would receive a "69% – 50%" grade if they "log in on a consistent basis;" an "84% – 70%" grade if they "complete an average [of] one quiz per week;" a "94% – 85%" grade if they "complete an average of two quizzes per week;" and a "100% – 95%" grade if they "complete an average of three quizzes per week." In other words, students would receive grades based on "effort" rather than performance.

65.     In May 2019, the principal at Doe High School called the account executive for the virtual instruction platform. According to the account executive, the principal asked for her "support in his efforts to report grades that are not reflective of the grades the students earned."

8

66.     Dr. Cathey began an investigation into the grade falsification allegations in May 2019 and uncovered the information described above. Multiple students reported that their grades had been changed from failing to passing under the terms of the "contract" with the principal.

67.     These acts by the principal violated MNPS's grading policies.

68.     These acts by the principal also constituted a violation of Tennessee Code Annotated section 39-14-136, which provides it is a Class A misdemeanor to "create[] . . . alter[], [or] give[] . . . a diploma, academic record, certificate of enrollment or other instrument which purports to signify merit or achievement conferred by an institution of education with the intent to use fraudulently that document or to allow the fraudulent use of that document."

69.     When Dr. Cathey completed his investigation into the falsification of grades at Doe High School in June 2019, Dr. Battle was serving as the Interim Director of Schools for MNPS. Dr. Cathey therefore reported his findings to Dr. Battle and recommended: (a) that MNPS terminate the principal; and (b) that MNPS report the principal to the Tennessee Department of Education, because his actions constituted a misdemeanor under Tennessee law.

70.     Dr. Battle rejected Dr. Cathey's recommendation to terminate the principal. She stated the principal's actions did not warrant termination and that other MNPS principals had "done a lot worse." Dr. Cathey then asked Dr. Battle when MNPS would start addressing serious issues like grade inflation/forgery. Dr. Battle did not like Dr. Cathey's line of questioning and responded by implying that Dr. Cathey was at fault for the grade falsifications at Doe High School.

71.     In February 2020, during a meeting with Dr. Cathey, Dr. Battle discussed another MNPS employee, Dr. Lily Leffler, with Dr. Cathey.

72.     Dr. Leffler was an MNPS Executive Director and reported to Dr. Cathey.

9

73.    Dr. Leffler was closely related to a former MNPS employee who was fired by MNPS and who later sued MNPS based on violations of Title VII.

74.    At this February 2020 meeting, Dr. Battle asked Dr. Cathey if Dr. Leffler could "separate her work" from the dismissal of her relative and questioned Dr. Leffler's "loyalty" to MNPS. Dr. Cathey refused to agree with Dr. Battle about Dr. Leffler and stated multiple times that Dr. Leffler was a professional who was doing an exceptional job.

75.    This was not the first time that Dr. Battle discussed Dr. Leffler's lack of "loyalty" with Dr. Cathey, nor his first time in advocating for Dr. Leffler and refusing to side with Dr. Battle regarding Dr. Battle's allegations against Dr. Leffler.

76.    In April 2019, Dr. Adrienne Battle was appointed as the Interim Director of Schools and on March 13, 2020, she was appointed Director of Schools.

77.    In less than two months from this appointment, all Plaintiffs were fired/demoted from their positions at MNPS.

78.    Plaintiff Meriwether was able to be rehired into a lower-level position of elementary school principal.

79.    Plaintiff Cathey was also rehired into the lower-level position of elementary school principal.

80.    Plaintiff Bailey was not able to find another position with MNPS.

## PLAINTIFF BAILEY'S DISCHARGE

81.    On May 1, 2020, Dr. Bailey was fired from his position as principal at Whites Creek High School. In a Zoom meeting, Dr. Chris Barnes, Chief of Human Resources, with Dr. Sharon Griffin, Chief of Innovation Schools, told Plaintiff Bailey that Plaintiff Bailey was being let go

because what MNPS is "looking for is to make a change at Whites Creek for the upcoming school year."

82.     Dr. Barnes told Plaintiff Bailey that Defendant was putting off hiring for principals. Plaintiff Bailey was told he could apply for other jobs at MNPS and then he named open principal positions. Dr. Barnes told Plaintiff that he needed to find another job at MNPS by June 30, 2020, or he would not continue in his employment at MNPS.

83.     Defendant, Dr. Battle, sent Plaintiff Bailey a letter dated May 4, 2020, which provided as follows:

> This letter confirms the conversation on May 1, 2020 that due to the district's reorganization and budget impact, your appointment as Principal (White's Creek High School) with the Metropolitan Nashville Public Schools will end effective June 30, 2020. You are eligible for rehire into any other open position with the district for which you apply and are selected. …. If you have not secured another position for which you have applied prior to June 15,2020 you will be administratively transferred by the Director of Schools, pursuant to Tenn. Code Ann. 49-5-510, for the efficient operation of the school system, into a classroom teaching position.

84.     As of this time, Plaintiff Bailey had an administrative license but did not have a teaching license.

85.     Bailey was not licensed to be transferred into a teaching position.

86.     Plaintiff Bailey was fired by Defendants when Bailey was removed from his principal's position.

87.     Defendant did not close or merge any traditional high schools for the 2020-2021 school year.

88.     Defendant did not eliminate any traditional high school principal jobs.

89.     Defendant did not eliminate the position of principal at Whites Creek High School for the 2020-2021 school year.

11

90.     Despite not closing any traditional high schools or eliminating any traditional high school principal positions, Defendant fired Plaintiff Bailey.

91.     Plaintiff Bailey was replaced by the principal of Madison Middle School, Dr. Brian Mells.

92.     This was a promotion for Dr. Mells from middle school principal to high school principal.

93.     Dr. Mells is 36 years old.

94.     Plaintiff was the only principal not to be offered either a principal or assistant principal's job and was the only high school principal to lose his job.

## PLAINTIFF MERIWETHER'S DISCHARGE

95.     Likewise, on April 29, 2020, MNPS told Plaintiff Meriwether that her position as Associate Superintendent was being eliminated due to the budget and that all Executive Directors would need to reapply for their positions and that other new positions would be added as well.

96.     On May 4, 2020, this was confirmed in a letter to Plaintiff Meriwether by Superintendent Dr. Battle. Battle wrote as follows:

> This letter confirms the conversation on April 29, 2020 that due to the district's reorganization and budget impact, your position as Associate Superintendent with the Metropolitan Nashville Public Schools will be eliminated effective June 30, 2020. You are eligible for rehire into any other open position with the district for which you apply and are selected. …. If you have not secured another position for which you have applied prior to June 15,2020 you will be administratively transferred by the Director of Schools, pursuant to Tenn. Code Ann. 49-5-510, for the efficient operation of the school system, into a classroom teaching position.

97.     Of the four Associate Superintendents, the youngest (40 years old) received a promotion, the second youngest (50 years old) was transferred to an Executive Director's position and the two oldest, Dr. Meriwether and Dr. Cathey, were demoted to principals.

12

98.     Dr. Battle selected five (5) new individuals to serve as Executive Directors who have less experience and some with less education, who were all years younger than Dr. Meriwether. Dr. Meriwether has twice the number of years of experience as an Executive Director as the younger ones selected.

99.     Meriwether was then hired into an elementary school principal's position for the 2020-2021 school year. This was at a lower level of pay and benefits.

## PLAINTIFF CATHEY'S DISCHARGE

100.     On April 29, 2020, MNPS told Dr. Cathey that his position as Associate Superintendent was being eliminated due to the budget and that all Executive Directors would need to reapply for their positions and that other new positions would be added as well.

101.     On May 4, 2020, this was confirmed in a letter to Dr. Cathey by Superintendent Dr. Battle. Battle wrote as follows:

> This letter confirms the conversation on April 29, 2020 that due to the district's reorganization and budget impact, your position as Associate Superintendent with the Metropolitan Nashville Public Schools will be eliminated effective June 30, 2020. You are eligible for rehire into any other open position with the district for which you apply and are selected. . . .  If you have not secured another position for which you have applied prior to June 15, 2020 you will be administratively transferred by the Director of Schools, pursuant to Tenn. Code Ann. 49-5-510, for the efficient operation of the school system, into a classroom teaching position.

102.     Accordingly, Dr. Cathey applied for an Executive Director position, which was one step below the Associate Superintendent position.

103.     MNPS conducted panel interviews for the Executive Director position. Dr. Cathey had the fifth-highest panel review scores of all interviewees for the Executive Director position.

104.     MNPS did not hire Dr. Cathey for any of the available Executive Director positions.

105.     Of the four Associate Superintendents, the youngest (40 years old) received a promotion, the second youngest (50 years old) was transferred to an Executive Director's position and the two oldest, Dr. Meriwether and Dr. Cathey, were demoted to principals.

106.     All of the individuals hired for the Executive Director position were younger than Dr. Cathey except for one.

107.     MNPS recruited two individuals for the Executive Director position after MNPS completed the application and interview process for the Executive Director positions. These individuals were age 39 and 43, respectively. Neither of these individuals originally applied for the Executive Director position. Neither individual has a doctoral degree.

## MNPS BUDGET

108.     Defendant did not need to eliminate Plaintiffs' positions due to the budget.

109.     Defendant had a budget of $914,475,600 for the 2019-2020 school year.

110.     Defendant's Budget was actually increased almost 20 million to $933,652,100 for the 2020-2021 school year.

111.     At the same time Defendant fired and/or demoted Plaintiffs, MNPS was adding jobs and hiring from the outside. Defendant created two new executive director positions and filled positions, which either did not exist or were unfilled in the 2019-2020 school year. Defendant also created a new position and hired an outside person to be the Executive Officer of Diversity and Inclusion. At the same time, Defendant was adding jobs and hiring from the outside.

112.     For the 2020-2021 school year, Defendant MNPS also gave all its employees two 3% pay raises.

113.     On January 25, 2021, the State of Tennessee Department of Education sent a notice to MNPS stating it had accumulated over $110,000,000 in unspent federal funds.

14

## CAUSES OF ACTION

## Violations 42 U.S.C. §1983 and the First Amendment

114. Plaintiff Bailey would state that his testimony and statements against the Coach were constitutional protected speeches. The testimony and statements about the mishandling of funds were also protected speeches.

115. Defendants took adverse actions against Plaintiff Bailey when it fired him.

116. This adverse action would deter a person of ordinary firmness from continuing to engage in making this protected speech.

117. Defendant, Dr. Adrienne Battle, acted under color of state law when Plaintiff Bailey was fired.

118. There is a causal connection between Plaintiff Bailey's protected speeches and the adverse actions.

## Violations of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment and the Tennessee Teacher Tenure Act

119. Plaintiff Bailey is both certificated and tenured.

120. MNPS told Plaintiff Bailey first that MNPS was looking to make a change and then Dr. Battle wrote Plaintiff that his appointment ended due to the district's reorganization and budget impact.

121. Defendant did not need to eliminate Plaintiff Bailey's position due to the budget and did not eliminate his position.

122. Plaintiff Meriwether is both certificated and tenured.

123. MNPS told Plaintiff Meriwether that her position was being eliminated due to the reorganization and budget.

124. Defendant did not need to eliminate Plaintiff Meriwether's position due to the budget.

15

125. Plaintiff Cathey is both certificated and tenured.

126. MNPS told Plaintiff Cathey that his position was being eliminated due to the reorganization and budget.

127. Defendant did not need to eliminate Plaintiff Cathey's position due to the budget.

128. At the same time MNPS told Plaintiffs their jobs were being eliminated due to the budget, MNPS was adding in new positions and hiring new employees.

129. Defendants violated Tenn. Code Ann. §49-5-510 because it did not transfer Plaintiff Bailey into a position for which he was licensed.

130. Defendants violated Tenn. Code Ann. §49-5-510 because any transfer of Plaintiff Bailey was not necessary for the efficient operation of the school system.

131. Defendants violated Tenn. Code Ann. §49-5-511(a), Tenn. Code Ann. §49-5-512 and Tenn. Code Ann. §49-5-513, because it ended Plaintiff Bailey's appointment without complying with any of the procedural safeguards of the Tennessee Teacher Tenure Act and without proper cause under the law.

132. Plaintiff Meriwether accepted a position as an elementary school principal; however, this position is not comparable to her position as Associate Superintendent.

133. Plaintiff Cathey accepted a position as an elementary school principal; however, this position is not comparable to his position as an Associate Superintendent.

134. Further, Plaintiffs Bailey and Meriwether, both tenured, had their positions eliminated not due to the budget, but due to retaliation for reporting/role in reporting, statements concerning the illegal activities of the Coach, and in the alternative, due to their ages.

135. Further, Plaintiff Cathey, who is tenured, had his position eliminated not due to the budget, but due to retaliation for reporting violations of Tennessee Code Annotated section 39-14-

16

136, which prohibits falsification of educational documents; and/or for refusing to support Dr. Battle's attempts to retaliate against Dr. Leffler because of her association with a former MNPS employee who sued MNPS based on violations of Title VII; or, in the alternative, because of his age.

136.    Defendants' actions in ending Plaintiff Bailey's appointment and attempting to transfer him to a position for which he was not licensed were improperly motivated by Plaintiff Bailey's statements and actions against the Coach.

137.    Defendants' actions in eliminating the position and transferring Plaintiff Meriwether were improperly motivated, by her statements and actions against the Coach.

138.    Defendants' actions in eliminating the position and transferring Plaintiff Cathey were improperly motivated by his reporting of violations of grade falsification and/or refusal to support retaliation against Dr. Leffler.

139.    Defendant, Dr. Adrienne Battle, acted under color of state law in engaging in these tenure act violations.

140.    Defendant engages in a custom or tolerance or acquiescence of violating its employees' rights under the Tennessee Teacher Tenure Act, and the Fourteenth Amendment to the Constitution of the United States of America, because employees will have their positions eliminated due to the budget, while in reality, Defendant has money in the budget for the position, and is hiring for other positions and adding new positions, as well as giving raises.

### Plaintiff Bailey's Claim for Violation of the Tennessee Public Protection Act

141.    Plaintiff Bailey was discharged in violation of Tenn. Code Ann. §50-1-304, solely for refusing to remain silent about illegal activity, the Coach's assault on a parent.   He also refused to remain silent about the mishandling of school funds.

17

## Violations of the Tennessee Human Rights Act and ADEA

### Plaintiff Bailey

142.    Plaintiff Bailey would state he was discriminated against and fired due to his age, in direct violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et. seq.*, § 4-21-301 *et. seq.* and Tenn. Code Ann. § 4-21-401 *et. seq.* and ADEA, 29 U.S.C. § 621, *et. seq.*

143.    Plaintiff, Dr. James Bailey, was in the protected age category in that he was 48 years old on the date of termination.

144.    Plaintiff Bailey suffered an adverse action in that he was discharged.

145.    Plaintiff Bailey was qualified for the position he held.

146.    Plaintiff Bailey was replaced by someone outside of the protected class.

### Plaintiff Meriwether

147.    Plaintiff Meriwether would state she was discriminated against and demoted due to her age, in direct violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et. seq.*, § 4-21-301 *et. seq.* and Tenn. Code Ann. § 4-21-401 *et. seq.* and ADEA, 29 U.S.C. § 621, *et. seq.*

148.    Plaintiff Meriwether was in the protected age category in that she was 58 years old on the date of her demotion.

149.    Plaintiff Meriwether suffered an adverse action in that she was demoted.

150.    Plaintiff Meriwether was qualified for the position she held.

151.    Plaintiff Meriwether was treated differently than non-class or substantially younger workers.

152.    Of the four Associate Superintendents, the youngest was given a substantial promotion and the second youngest was hired as an executive director.

153.    The two oldest, including Plaintiff Meriwether, were demoted to principal positions.

18

154. Plaintiff Meriwether applied for the Executive Director position and was qualified for this position, having successfully been an Executive Director for 7 years before becoming an Associate Superintendent.

155. As an Associate Superintendent, Plaintiff Meriwether supervised the Executive Directors.

156. Less qualified younger candidates were hired as Executive Directors.

157. Defendant, MNPS, discriminated against Plaintiff Meriwether based upon her age when it did not hire her for this position and hired/promoted younger candidates.

**Plaintiff Cathey**

158. Plaintiff Cathey was discriminated against and demoted due to his age, in direct violation of the Tennessee Human Rights Act, Tenn. Code Ann. 4-21-101 *et seq.* and ADEA, 29 U.S.C. § 621, *et. seq.*

159. Plaintiff Cathey is in a protected class because he was 55 years old on the date of his demotion.

160. Plaintiff Cathey suffered an adverse action when he was demoted.

161. Plaintiff Cathey was qualified for the position that he held.

162. Plaintiff Cathey was treated differently than substantially younger workers.

163. Of the four Associate Superintendents, the youngest was given a substantial promotion and the second youngest was hired as an Executive Director.

164. The two oldest, including Plaintiff Cathey, were demoted to principal positions.

165. Plaintiff Cathey applied for the Executive Director position and was qualified for that position.

166. As an Associate Superintendent, Plaintiff Cathey supervised the Executive Directors.

19

167.    Less qualified, younger candidates were hired as Executive Directors.

168.    MNPS discriminated against Plaintiff Cathey based on his age when it did not hire him for this position and hired/promoted younger candidates.

169.    Plaintiffs received their Right to Sue Letters as follows:

Dr. James Bailey:              March 12, 2021.

Dr. Pippa Meriwether:         April 6, 2021.

Dr. Damon Cathey:            February 11, 2021

Furthermore, more than 60 days have elapsed since each Plaintiff filed their respective EEOC Charges of Discrimination alleging violations of the ADEA.

## DAMAGES

170.    As a direct and proximate result of Defendant's unlawful actions, discrimination and retaliation, Plaintiffs have suffered and continue to suffer emotional pain, suffering, stress, anxiety, loss of enjoyment of life, pain and suffering, humiliation, professional and personal embarrassment, and depression and inconvenience.

171.    As a direct and proximate result of Defendant's unlawful actions, Plaintiffs have suffered and continue to suffer damages for lost wages, benefits, including pension benefits and front pay.

172.    As a result, Plaintiffs are entitled to recover their damages, including lost wages, benefits, including pension benefits and longevity pay, full pay, compensatory, liquidated and punitive damages, attorney's fees, costs, interest, and any other legal and equitable relief to which they may be entitled.

**WHEREFORE, PLAINTIFFS PRAY:**

1.      That Plaintiff, Dr. James Bailey, be granted a judgment against Defendant for compensatory and other damages suffered by him, including but not limited to, damages for pain and suffering, humiliation, professional and personal embarrassment, stress, anxiety, depression, loss of enjoyment of life, personal injury, emotional pain and inconvenience, back pay, interest on back pay, full pay, lost benefits, loss of pension benefits, injury to character and personal injury.

2.      That Plaintiff, Dr. Pippa Meriwether, be granted a judgment against Defendant for compensatory and other damages suffered by her, including but not limited to, damages for pain and suffering, humiliation, professional and personal embarrassment, stress, anxiety, depression, loss of enjoyment of life, personal injury, emotional pain and inconvenience, back pay, interest on back pay, full pay, lost benefits, loss of pension benefits, injury to character and personal injury.

3.      That Plaintiff, Dr. Damon Cathey, be granted a judgment against Defendant for compensatory and other damages suffered by him, including but not limited to, damages for pain and suffering, humiliation, professional and personal embarrassment, stress, anxiety, depression, loss of enjoyment of life, personal injury, emotional pain and inconvenience, back pay, interest on back pay, full pay, lost benefits, loss of pension benefits, injury to character and personal injury.

4.      That Plaintiffs be ordered reinstated to their prior status or front pay in lieu thereof, with all accumulated salary rights and benefits as if continuously employed.

5.      Plaintiffs further pray for both liquidated and punitive damages and for pre-judgment interest, attorney's fees, litigation costs, and the cost of this cause.

6.      Plaintiffs pray for a jury of six to try this cause.

7.      Plaintiffs pray for such other further relief as may be necessary or appropriate.

Respectfully Submitted,

*/s/Ann Buntin Steiner* _____
Ann Buntin Steiner    #11697
Steiner & Steiner, LLC
613 Woodland Street
Nashville, TN 37206
(615) 244-5063
asteiner@steinerandsteiner.com

*Attorney for Plaintiffs, Dr. James Bailey & Dr. Pippa Meriwether*


/s/ *Jesse Ford Harbison* _____
Jesse Ford Harbison, BPR No. 032105
JESSE HARBISON LAW, PLLC
1109 N. 6th Street
Nashville, TN 37207
Telephone: (615) 415-3285
Email: jesse@jesseharbisonlaw.com

*Attorney for Plaintiff, Dr. Damon Cathey*

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2021, a copy of Plaintiffs' Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows: J. Brooks Fox, Allison L. Bussell, Melissa S. Roberge, Mallory L. Ricci, & Justin Marsh, Department of Law, Metropolitan Courthouse, Suite 108, P.O. Box 196300, Nashville, Tennessee 37219. Parties may access this filing through the Court's electronic filing system.

s/Ann Buntin Steiner
Ann Buntin Steiner